UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHRISTOPHER EARL PEEK,  )
3721 30th Place NE  )
Washington, DC 20018  )
(202) 294-6496  )
  Plaintiff  )
        )
        )
  v.       )
        )
SUNTRUST BANK, INC.  )
Its Subsidiaries, affiliates, and Assigns,  )
C/o BWW LAW GROUP  )
6003 EXECUTIVE BLVD.  )
 DEFENDANT  )
SUITE 101  )
ROCKVILLE, MD 20852  )

**Case: 1:19-cv-00658 Jury Demand**
**Assigned To : Unassigned**
**Assign. Date : 3/8/2019**
**Description: Pro Se General Civil (F-DECK)**

Jury Trial Requested

## COMPLAINT
### (FOR DECLATORY JUDGEMENT, CANCELLATIONS OF CREDITOR ACTION, VIOLATIONS OF EQUAL CREDIT OPPORTUNITY ACT, VIOLATION OF REAL ESTATE SETTLEMENT PRACTICES ACT, FRAUD AND OTHER RELIEF)

Christopher Earl Peek ("Plaintiff or Peek"), an individual, and in his capacity as debtor to

SUNTRUST Bank Inc., their affiliates, subsidiaries, and assigns (Collectively "SUNTRUST" or

"Creditor") residing at 3721 30th Place NE Washington, DC 20018 hereby brings this Complaint.

Christopher Peek is an African-American (Black person) and a member of a protected class for

matters arising from and related to the Equal Credit Opportunity Act.

I.
### BACKGROUND AND NATURE OF THE CASE

Peek, as borrower and debtor to SUNTRUST entered into a promissory note for the

mortgage to property purchased and held by Peek on or around May-August 2008 in the

approximate amount of $350,000. Peek made timely payments on the loan according to the terms

of the note from inception until or around March 2014. Peek suffered certain economic and

career hardships in 2014 to the date of this Complaint.

Peek informed SUNTRUST of these hardship circumstances and SUNTRUST continued to accept payments from time to time on the loan. Peek entered, applied to, and was approved to modify said mortgage loan in or around January 2016. As part of a repayment plan for the next 3 months starting in March 2016, Peek was to pay a designated amount. Peek made the designated payments and regularly contacted SUNTRUST on the progress for repayment up to payment of the last payment as directed by SUNTRUST. SUNTRUST formally notified Peek that he had successfully completed the modification and then more than almost 60 days later, notified Peek that he had not completed the modification program.

Peek filed a case in District Court of Virginia on these matters in late 2016/ early 2017 that was dismissed by the Court there. Peek refiled the matter in the District Court of DC but was barred from making the complaint under the theory of res judicata.

This is a wholly new Complaint for new allegations of actions and activities unrelated to and not arising from the other actions. The facts are entirely different from the 2016/2017 action. The allegations herein are an entirely new fact set based on new credit applications in 2018 and related activities between the Parties subsequent to the prior litigation. None of the activities, facts, references from the prior litigation are included and this is a new Complaint for actions and activities between the parties from June 2018- present.

II.

PROCEDURAL HISTORY

C. Earl Peek made verbal and completed written applications for modification of his mortgage in July-November 2018 for modification of his mortgage and made applications and supplied items to SunTrust and the Consumer Finance Protection Bureau (CFPB) in writing. SunTrust either didn't reply, didn't reply timely, or provided alternate reasons for its credit decision verbally that was not documented in writing by the ECOA.

Peek submitted information, considered a credit application, to modify the loan as advised by SUNTRUST representatives. The representatives stated in writing and verbally that all matters were complete on specific dates and then asked for additional items after the written applications and verbal confirmations of a complete application were provided greater than 30 days from the date of the complete applications.

SunTrust added new items to the application process, deleted documents submitted by Peek that would have qualified him for credit approval, and engaged in other actions and activities inconsistent to applications for credit and of which biased his application.

SunTrust informed Peek that all proceedings in foreclosure would be stayed, suspended, or withdrawn while Peek had an active application for modification, but continued to pursue foreclosure and litigation contrary to its written and verbal assurances.

III.

BASIS OF JURISDICTION

1. Jurisdiction is founded upon 15 U.S.C. §1691, 28 U.S.C. 1331, 28 U.S.C. §1343, 28 U.S.C. 2201, and 24 CFR 3500.

2. Plaintiff further asserts that this Court has jurisdiction pursuant to § 701(a)(1) of the Equal Credit Opportunity Act. - 15 U.S.C. § 1691(a)(1), as amended.  SUNTRUST clearly is a creditor per the complaint alleged herein according to 15 U.S.C. 1691(a)(e).

3. Title 28 U.S.C. § 1332(a) offers  that the court may hear such suits on matters in controversy that exceeds the sum or value of $75,000. The SUNTRUST Mortgage is approximately $350,000.

4. Peek is a resident of the District of Columbia and the real estate  residence is in the District of Columbia. SUNTRUST operates  bank, collection, and mortgage activities from 1001 Semmes Avenue Richmond, VA and Peek has corresponded telephonically and by U.S. Mail

with SUNTRUST from this location. The controversy is subject to diversity of jurisdiction and grants the federal court jurisdiction of this matter.

## IV.
## VENUE

Plaintiff incorporates the above paragraphs "1" through "4" as if fully set forth herein.

5. Venue lies in this judicial district because the claim arose in a federal judicial district, and pursuant to 28 U.S.C. 1391(a)(1)(2), as amended.

## V.
## PARTIES

Plaintiff incorporates the above paragraphs "1" through "5" as if fully set forth herein.

6. Plaintiff is a resident of the District of Columbia. Mr. Peek, (a) timely applied for an modification, renewal, and grant of credit programs with DEFENDANT during 2018 and was the subject of willful and continuous bias, including denial of his applications for renewal, extension, and grant of credit, and DEFENDANTs refusal to provide credit causes and is causing him substantial damages and (b) timely filed complaints to DEFENDANT of the arbitrary, capricious, and willful acts giving rise violation of the Equal Credit Act, which complaints were not investigated timely, fully, or properly essentially denying the allegations, although such denial was contrary to the facts and applicable law causing him substantial damages (c) Peek has not been notified within the required 30 day period required by the ECOA on a negative credit decision arising from a credit transaction in violation of the ECOA.

7. DEFENDANT SUNTRUST and its representatives, agents, and attorneys have engaged in credit and collections practices subject to the provisions of the Equal Credit Act and governance provisions of the Real Estate Practices Settlement Act.

VI.

## ORGANIZATION OF DEFENDANT CREDIT TRANSACTION AT ISSUE

Plaintiff incorporates the above paragraphs "1" through "7" as if fully set forth herein.

8. SUNTRUST is a Creditor under the definition of the ECOA and provides credit funds and loan modifications in the form of credit known as mortgages to applicants for a mortgage against real estate located in the District of Columbia where SUNTRUST operates a banking office and retail banking activities.

Peek borrowed funds from SUNTRUST and applied for Credit under the definition of ECOA for such transactions and escrowed amounts to SUNTRUST as part of the repayment modification program.

9. SUNTRUST offers as products through its operations and subsidiaries loans, loan products, and credit and collection activities. SUNTRUST offers these products publicly in District of Columbia via brokers, employees, representative and its internet site and solicitations through the U.S. Postal office and by other means. SUNTRUST regularly engages in collection and foreclosure activities in the District of Columbia.

10. SUNTRUST offer alternatives to default and foreclosure of loans it makes in the District of Columbia under federal laws under the Dodd-Frank Act of 2010 and Federal Housing Act by means of repayment agreements, loan modifications, short sale of property, deeds in lieu of foreclosure, deferred principal arrangements, and other means upon application and request of its borrower-applicants.

11. SUNTRUST sends, at the request of applicant-borrowers, a checklist of items needed to modify the loan when hardship is known and SUNTRUST regularly reviews, processes, and makes credit decisions from information presented as an application for credit.

VII.

FACTS, FACTUAL ALLEGATIONS AND RECITAL OF DAMAGES AND DEFENDANT'S BEHAVIOR  WHEN COMPLAINTS FILED

Plaintiff incorporates the above paragraphs "1" through "11" as if fully set forth herein.

12. Plaintiff filed a credit application with SUNTRUST in or around July, August, and September 2018. The ECOA does not require written applications for credit and applications for credit that can be done verbally.

13.  Plaintiff submitted applications for credit via modified loans.

14.  Plaintiff applied for credit numerous  times to  SUNTRUST and SUNTRUST intentionally did not approve or deny the completed application timely by ECOA guidelines.

15.  Plaintiff submitted all requested information to SUNTRUST to complete the application with such data showing income, expenses, tax, banking, and related information required by SUNTRUST for SUNTRUST to make a credit decision and SUNTRUST received the data and acknowledged receipt in writing.

16.  Plaintiff made multiple inquiries with SunTrust about data it requested that wasn't considered as part of the credit application.

17.  SunTrust conducted a call on July 13, 2018 at 8:28AM discussing the Uniform Borrower (UBA) application which is an application for credit.

18.  In the July 13, 2018 call with a person identified phonetically as "Maya or Mya".

19.  In the July 13, 2018 call, SunTrust was responding to a written complaint to the Consumer Protection Finance Bureau.

20.  SunTrust in the July 13, 2018 call affirmed that the foreclosure activities, once the UBA was confirmed as complete, "would be paused and put on hold".

21. On July 20, 2018, SunTrust conducted a call at 1:17PM with a Nancy Thorpe. Peek discussed and made loan application with SunTrust on forbearance or deferment of the delinquent portion of the loan.

22. Peek applied for a forbearance, deferment of outstanding payments, and re-amortization of the loan in July, August, September, and October 2018.

23. Peek applied for an elimination of his Purchase Mortgage Insurance (PMI) by FHA guidelines of which SunTrust accrues at least $500 a month for PMI.

24. When Peek applied for the PMI in 2016, 2017, and 2018, his property was valued in excess of $550,000 by the District of Columbia Tax Assessment and Assessor and was greater than 65% of the loan value.

25. SunTrust has been collecting and/or paying Peek's real estate taxes and thus knows the value of the tax assessment by District of Columbia.

26. Peek's SunTrust principal loan balance of approximately $350,0000 is less than 68% of the commercial market value of his residence and the tax assessed value.

27.   SunTrust denied eliminating the PMI even though it knows or should have known of the value of Peek property therefore causing excessive interest to be accrued for the loan payments and delinquency amount.

28. SunTrust knew Peek was unemployed by conversation with Thorpe on July 20, 2018 where Thorpe noted on Peeks UBA and noted the same in the SunTrust records unemployment.

29. Peek spoke with Thorpe on August 7, 2018 at approximately 8:25AM and submitted sources of income from his personal bank statements prior to that call on July 24, 2018.

30. Peek answered all of the items to have a completed Mortgage Assistance Application or "MAA" (the updated form name for a UBA, a credit application to SunTrust).

31. SunTrust notified Peek in writing that the credit application was complete on or near July 29, 2018.

32. SunTrust did not render a credit decision by August 29, 2018 or issue a written letter declining of the application for credit by August 29, 2018.

33. Thorpe informed Peek on August 9, 2018 to submit full bank statements without redactions. Peek complied within 7 business days.

34. Peek spoke with Amanda Jones on August 17, 2018 at approximately 12:30PM. Peek was informed that the only item needed to complete the MAA was a June 2018 bank statement.

35. SunTrust received the June 2018 bank statement document on or near August 20, 2018.

36. Peek returned a call from Nancy Thorpe on August 21, 2018. Thorpe confirmed that the complete MAA was received on August 20, 2018.

37. Thorpe confirmed to Peek on August 21, 2018 at approximately 1:03 PM that foreclosure activities "would be put on hold" now that the completed MAA was submitted.

38. Thorpe confirmed that SunTrust will contact its lawyers that the MAA package is complete and foreclosure activities were to be on hold or cease while the MAA is under review.

39. SunTrust lawyers continued foreclosure proceedings and litigation against Peek in August-November 2018 while the MAA and related appeals was under review by SunTrust and items were being appealed, contested at the Consumer Protection Finance Bureau, and in writing by Peek.

40. Peek spoke with Aneisha Rainey (Phonetic) of SunTrust on September 7, 2018 at around 6:16 PM.

41. Rainey confirmed that the foreclosure was suspended as of August 21, 2018 due to a complete application.

42. Raieny confirmed that "we already have it (the foreclosure) in the system that was suspended."

43. Rainey confirmed that Joanne Harris, another SunTrust representative, also confirmed that Peek had a complete MAA per by SunTrust on August 21, 2018.

44. Peek spoke with Kim Robinson, another SunTrust representative,  on September 13, 2018 around 1PM.

45. Peek informed SunTrust by phone,  email,  and letter in August and September  that SunTrust lawyers continually were pursuing litigation in foreclosure despite SunTrust confirming by at least 3 SunTrust representatives that all foreclosure proceedings would be suspended, put on hold, and ceased.

46. Peek suffered emotional distress, damage to his reputation and credit standing, could not seek employment in his field as an accountant, lender, and banker due to SunTrust continued pursuit of foreclosure.

47. Peek could not refinance, obtain a loan to cure the delinquency, or other measure due to SunTrust notation of foreclosure and collections matters on his credit report and in public filings.

48. Peek sent additional items to SunTrust after being informed that the MAA package  was complete in August per the call with Kim Robinson regarding an IRS extension form on tax returns and a 2017 Profit and Loss statement on his company.

49. Peek spoke with a "Magin" (phonetically) on September 18, 2018 at 11:06AM including employment offer letters and all new data. Magin was informed of the documents submissions to SunTrust, the  employment offer letter in the package that was faxed and sent to SunTrust prior to that date.

50. Peek was informed verbally on or near October 12, 2018 that the MAA credit application could not be approved due to a $370 DC Water lien on the property.

51. SunTrust usually informs applicants for credit  of issues in underwriting when it considers credit applications and provide borrowers a chance to cure deficiencies or offer explanations.

52. SunTrust did not provide Peek written notice of the issue in underwriting with the alleged water lien and offer Peek a chance to cure the alleged deficiency.

53. Peek spoke with Sheryl Barnes (Mortgage License  # 11918191) on October 25, 2018 at around 9:30AM.

54. Peek informed Barnes that he contested the mortgage lien of $370 as valid and further that the amount should not prevent a MAA approval.

50. Peek informed Barnes that the lien was nonexistent and was just a water bill.

51. Peek informed Barnes that he sent  proof of the payment of the bill and an email from DC Water to SunTrust that the lien didn't exist and there was no debt.

52. SunTrust, after reviewing the lien data and payment of the water bill  item,  wouldn't adjust the review of the MAA application even when provided third party proof from the District of

Columbia on the alleged water lien the matter has bill at any event was extinguished and paid in full.

53. SunTrust, unlike when it requested more tax, bank, and business data after the August 29, 2018 MAA had been confirmed as complete, wouldn't take the corrected or updated data to allow for a MAA approval.

54. SunTrust deliberately didn't approve the MAA with a partial claim (method for deferring outstanding payments to the end of loan) despite direct written evidence to the contrary that the DC Water alleged water lien was paid within 48 hours or notification by SunTrust single point of contact and the data Peek had sent to SunTrust on the water bill and alleged water bill lien.

55. SunTrust didn't send actual proof of the alleged lien water bill data it used as a basis for denying Peek credit or did SunTrust send a credit denial letter timely by the ECOA.

56. Barnes informed Peek by telephone that there would be a response within 48-72 hours.

57. SunTrust didn't resolve the issue and approve the MAA within 48-72 hours even after the matter was presented as fully cleared by the District of Columbia.

58. Peek spoke with Michael Little, a SunTrust representative, on October 26, 2018 around noon.

59. Little asserted that the loan was in active foreclosure and active loss mitigation contrary to confirmation by three representation of SunTrust months before that the loan was NOT (emphasis added) in active foreclosure.

60. Contrary to the Barnes call the day before to Little and Peek's appeal of the water bill or line error to be resolved for resolution, Little asserted that there is not loss mitigation option.

61. Peek told Little that the lien resolution payment and lien release item was done by letter, email, and fax to SunTrust and that the lien matter was cleared. Little reviewed the actual email correspondence from DC Government representative Sean McMullen that there was no lien on the property while on the phone with Peek.

62. Little required Peek to file an appeal of the MAA denial based on an alleged water lien decision by using a SunTrust approved appeal form that SunTrust never sent to Peek timely within 30 days of the decision.

63. Little informed Peek that one option SunTrust considers for a MAA approval is a partial claim which is a SunTrust mechanism that will be add delinquent amounts to the end of the maturity of the loan.

64. Peek discussed that he had asked and applied for what SunTrust defines as a "partial claim" when he made the MAA in August 2018 asking for a forbearance and principal deferral in writing.

65. SunTrust didn't address, resolve, or correct the error it made on the water lien which led to a denial of credit from SunTrust.

66. Peek spoke with Gale Townes, a SunTrust representative, on December 7, 2018.

67. Peek informed Townes about the items in the MAA including an offer an employment letter that wasn't reviewed by SunTrust, and a tax lien letter that was resolved by Peek.

68. Townes, in the December 7 call, read a reply from a SunTrust "solutions specialist" that discounted or discarded the employment letter, deleted are altered the MAA Peek submitted to SunTrust, and would not adjust its review of the MAA for a partial claim for a $370 water bill that didn't exist at least 30 days prior to December 7, 2018.

69. Townes noted that the solutions specialist discussed income calculations for Peek per his employment letter, income for Diamond Ventures as secondary income, and the tax lien.

69. The solutions specialist decided on the MAA and asked for a pay stub to verify the employment letter that SunTrust never asked Peek to produce.

70. SunTrust asked Peek to verify consulting income on the MAA and Peek sent into SunTrust bank statements showing the deposits for verifications of the consulting income.

71. SunTrust would not accept Peeks deposits to his bank account verifying consulting income which came directly from Peeks bank.

72. SUNTRUST from June 2018-December replied to Peeks credit applications and concerns made in writing, in response to Peek complaints in wiring to the Consumer Protection Finance Bureau.

73. Plaintiff materially relied on getting an approved modification to start a process to refinance the SUNTRUST mortgage but learned that SUNTRUST was reporting the mortgage status and credit history contrary to representations of SunTrust that foreclosure proceedings and related activities would be suspended.

74. SUNTRUST actions have caused material damages to Peek that are more than $250,0000 which arises from lack of ability to refinance the property, negative notices on Peek's credit and reputation, higher interest rates for loans and credit and other purposes.

75. Peek cannot apply for accounting or lending positions due to damages to Peek's credit and reputation.

VIII.

## BIASED, ARBITRARY AND CAPRICOUS CONSIDERATION OF CREDIT APPLICATION AND RELEVANT CREDIT APPLICANT EXPERIENCE UNDER SUNTRUST  CREDIT PROGRAMS

Plaintiff incorporates the above paragraphs "1" through "75" as if fully set forth herein.

76. SUNTRUST wholly disregarded the credit application and renewal and modification application in a malicious scheme and consistent pattern to overlook its own processing policies and the appropriate provisions of the ECOA and violate the Dodd Frank Act and various federal statutes and representations of its employees.

77. SUNTRUST ignored, totally disregarded, and failed to consider materials it requested to grant a credit review and loan modification in a scheme to deny Plaintiff's application.

78. SunTrust arbitrarily discarded Peek attempts to address underwriting concerns by SunTrust as is typical when an application for credit is made related to income verifications and the DC alleged water lien.

79. SUNTRUST damaged Peek's reputation with the false notations on his credit report and credit reporting on the mortgage relationship contract as it outlined it would not due when the modification was approved.

80. SunTrust has stubbornly retained FHA Purchase Mortgage Insurance (PMI) on the property which clearly is eligible by SunTrust 2018 letters to Peek and real estate values publicly known in the District of Columbia its value to have PMI removed.

81. SunTrust inclusion of PMI denied Peek approval for credit or the opportunity to be approved for credit.

82. Peek spoke with and made application to SunTrust for a forbearance, adjusted mortgage, deferral of delinquent principal with Mr. Daniel Oliveros on January 3, 2019 at 2:39PM.

83. Peek outlined to Oliveros that he had or would have secondary income as a CPA and the rental of his home basement. Peek asserts that that secondary income will be greater than $1,000 a month that wasn't factored in by SunTrust in its review for loan modification.

84. Oliveros allegedly sent a denial letter to Peek of his January 3, 2019 mortgage assistance credit application on or near January 28, 2019 but no letter was delivered and neither was Peek called that the letter was being sent as SunTrust customarily has done.

85. Oilveros explained to Peek certain considerations required by the Federal Housing Administration (FHA) including rate modifications but the denial did not show any consideration of the same in the denial letter.

86. Oliveros explained in the January 3, 2019 call with Peek that he would SunTrust could defer the principal by FHA guidelines until the end of the loan but SunTrust refused to do so even though SunTrust has a first lien on the property and executing such act of deferral wouldn't have affected the loan status or SunTrust's lien position.

87. Oliveros explained that SunTrust would evaluate the options to make payments at 40% debt-income ratio.

88. In the mortgage denial, Peek's income was greater than the amount indicated by SunTrust as per Peek's credit application as SunTrust reported on the denial letter.

89. Peek's debt to income for mortgage assistance at 40% of the income reported by SunTrust was less than the mortgage payment Peek was required to make to SunTrust when the loan was in good standing.

90. Peek demonstrated the capacity to repay a modified loan to SunTrust.

91. SunTrust never contacted Peek regarding the application process, any discrepancies of information, or added and included all of the items Peek required as part of the completed credit application.

92. The FHA Home Affordable Modification Program (FHA-HAMP) by Section 230(b) of the National Housing Act, 12 USC 1715u(b), as amended by the Helping Families Save Their Homes Act of 2009, Division A of Pubic Law 111-22 makes eligible homeowners to obtain a partial claim of up to 30% of the unpaid principal balance as of the date of the default.

93. Peek was eligible for a partial claim and asked for the same in 2016, 2017, 2018, and 2019.

94. SunTrust didn't consider a partial claim in 2016 and 2017 effectively denying Peek a modification by federal law and in violation of the ECOA of similarly situated persons and continued that pattern of ill treatment in 2018 and 2019.

95. If SunTrust had processed a partial claim of Peek's mortgage, then the loan would have been successfully modified.

96. Collectively, with Peek's new verified income, secondary income, deletion of Purchase Mortgage Insurance (PMI), Peek was eligible for a loan modification but was denied credit by SunTrust as compared to other similarly situated persons and by ECOA and FHA requirements.

IX
<u>INTENTIONALLY DISCARDING, EXCLUDING, AND WHOLLY DISCOUNTING
RELEVANT AND MATERIAL COMPONENTS OF THE SUNTRUST APPLICATION</u>

Plaintiff incorporates the above paragraphs "1" through "96" as if fully set forth herein.

97.  SUNTRUST and its Representatives requested information from Plaintiff as part of its review of eligibility to determine Plaintiff's eligibility for a loan modification and failed to provide a decision within 30 days of the required notification period by the ECOA. Plaintiff submitted all items to SUNTRUST for a determination of a modification based on a projected budget and projected income.

98.  Plaintiff submitted a full, detailed, and complete application for a loan modification and complied in a timely, prompt and full fashion to additional information request of SUNTRUST and the Representatives.

99.  SUNTRUST and its Representatives failed to ascertain and verify completely the information submitted, intentionally refused to evaluate the information submitted and advise Plaintiff of its objection or assent to the items submitted and intentionally evaded providing Plaintiff appraisals of the data when the foreclosure action was challenged in an advance scheme to deny the credit outside the provisions of the Equal Credit Act.

100.  SUNTRUST acted arbitrary, capriciously, and adversely to Plaintiff with maliciousness and intention to bias the Plaintiff and separate it from eligibility by making false statements and intentionally disregarding data relevant to the decsionmakers evaluation.

101.  SUNTRUST'S lawyers, BWW Law Group, violated the Fair Debt Collection Practices Act by disclosing in a  public Court Hearing February 1, 2019 of a credit decision of SUNTRUST by not issuing a Mini Miranda of "This is an attempt to collect a debt…." At the hearing.

102.  SUNTRUST lawyers, BWW Law Group, violated the Bank Secrecy Act when they disclosed personally identifiable information in open court on February 1, 2019.

103.  SUNTRUST lawyers, BWW Law Group, violated the Equal Credit Opportunity Act and the Bank Secrecy Act  when it issued a credit decision in the February hearing on behalf of

and for SUNTRUST with intent to discriminate, publicly embarrass, slander, and defame against Peek when compared to its normal conduct with similarly situated persons when it issued an alleged SunTrust credit decision in a public court hearing before the Judge and discussed the private credit application and disclosed private non-public information without Peek's authorization.

## X.
## CONCLUSION

Plaintiff incorporates all of the above paragraphs 1 through 104, together with all of the information herein as if fully set forth herein.

### COUNT I
### (Declaratory Judgment)

105. Plaintiffs, reaallege Paragraphs 1-100 above as if fully set forth herein.

106. An actual controversy exists between Plaintiff and DEFENDANT as to their rights with respect to DEFENDANT's Credit programs, escrow accounts, PMI, loan modification credit programs, and related loan servicing programs.

107. Plaintiffs pray that this Court declare and determine, pursuant to 28 U.S.C. 2201, the rights of plaintiffs under DEFENDANT's compliance with the ECOA, RESPA, and related federal acts and programs including their right to equal credit, participation in the SUNTRUST programs, and their right to full and timely enforcement of applications and the modification applications for the loan.

### COUNT II
### (Creditor Action That Is Arbitrary
Capricious, An Abuse of Discretion, Not in Accordance
With Law, And in Excess of Statutory Requirements)

108. Plaintiffs, reallege Paragraphs 1-107 above as if fully set forth herein.

109. DEFENDANT's acts of denying plaintiffs credit and/or other benefits and

systematically fully, and without bias process their Credit application were not authorized nor justified by any statute, regulation, or reasonable interpretation of federal statutory procedures, and thus constitutes arbitrary, capricious and unlawful action.

110. Plaintiffs pray DEFENDANT's actions in foreclosure be reversed and deleted as arbitrary, capricious, an abuse of discretion, and not in accordance with law, pursuant to applicable provisions of the ECOA and RESPA Acts.

## COUNT III
### (Fraud)

111. Plaintiffs, realleges Paragraphs 1-110 above as if fully set forth herein.

112. DEFENDANT's acts of denying plaintiffs credit and other benefits and systematically failing to process their complaints and credit application was contrary to the requirements of the ECOA.

113. DEFENDANTS discarded and discounted income, application, and material key items in the MAA, before the Consumer Protection Finance Bureau, and internally so as not to approve a loan modification application.

114. DEFENDANTS changed the requirements for the MAA after it was complete in a manner that supports declination without regard to the actual facts in the loan application MAA.

115. DEFENDANTS representatives contradicted each other and provided inconsistent direction and information as to the status of the foreclosure litigation being suspended in concert with foreclosure attorneys in a scheme with DEFENDANT to cause denial of credit.

116. DEFENDANTS foreclosure attorneys, even when presented with verbal and written declarations of DEFENDANT that the foreclosure was suspended represented to the Superior Court of DC that they would not comply with the DEFENDANT and thus the parties collectively deceived plaintiff as to the status of the MAA.

117. DEFENDANT solutions specialist underwriters provided information to the plaintiff's credit files and applications that did not compare with actual data submitted with the credit application so as not to approve PLAINTFF wrongfully.

118. DEFENDANT did not correct erroneous data when it had third party data on the tax lien and income even when the data was supplied in writing.

119. DEFENDNT intentionally mispresented that appeal process would be an avenue to make or reconsider a credit application denial and delayed sending documents for filing an appeal so as to defraud PLAINTIFF of submitting eligible documents to overcome a rejection.

120. DEFENDANT misled and misrepresented to the United States Consumer Protection Finance Bureau of the resolution of complaints against DEFENDANT.

121. DEFENDANT misrepresented the appeal process for a loss mitigation credit application request even when it had substantive data on the status of an appeal in writing even when the SunTrust appeal form wasn't submitted.

122. Plaintiffs representatives fraudently in writing, verbally, and telephonically informed Plaintiff of the requirements to complete the modification process credit application and when Plaintiff satisfied the requirements, Defendants representatives rejected the credit application.

123. Plaintiff, in the allegations above incorporated by reference, denoted the time, place, circumstances, condition, time of the call, examples of identified written correspondence to

124. Plaintiffs pray Defendants actions be reversed and dismissed as arbitrary, capricious, an abuse of discretion, and constitute fraud and Plaintiffs pray this court issue financial damages for the egregious conduct of defendants and prohibit foreclosure actions from proceeding.

COUNT IV
(Violation of Real Estate Practices Act (RESPA)

21

125. Plaintiffs, reallege Paragraphs 1-124 above as if fully set forth herein.

126. Plaintiff made multiple written request to SunTrust in 2018 that it did not reply to timely for adjusting the PMI.

127. Plaintiff informed SunTrust of errors in the application or accruing of payments for the modification, errors in credit reporting, errors adjusting the mortgage for private mortgage insurance directed by the Federal Home Administration requirements, errors in reporting mortgage balances and escrow payments, and other items that were not corrected by Plaintiffs by RESPA requirements or within the prescribed times provided for in the RESPA.

128. Plaintiffs prays for money damages for plaintiffs and the rescission of the $350,000 mortgage, cancellation of the mortgage, penalties for noncompliance with the ECOA, penalties for noncompliance with RESPA, sanctions as deemed proper per violation under the statute, refund of or reduction of payments in excess of escrow and cost and fees of this action, and waiver of any amounts to be paid Defendant that Plaintiff should have made due to the improper denial of credit and executing fully the approved loan modification.

COUNT V
(ECOA)

129. Plaintiffs, reallege Paragraphs 1-128 above as if fully set forth herein.

130. ECOA requires an Adverse Action Notice of which Plaintiff did not send or send timely.

131. ECOA requires Adverse Action Notices within 30 days of when the Creditor has all of the information needed to make the credit decision to notify applicants of approval or denial of credit considerations.

132. Plaintiff was denied participation in a federal financed program. The FHA guarantees loans of banks to facilitate them to make the loans and thus SunTrust is a beneficiary of the FHA guarantee which is a financial guarantee and thus is a federally financed program.

## COUNT VI
### (Damages)

133. Plaintiffs, reallege Paragraphs 1-132 above as if fully set forth herein.

134. Plaintiff has suffered a decline in credit score creating more cost for credit and has not been able to secure a refinancing of the SunTrust loan due to the credit notations by SunTrust that the delinquent loan status and that the property was in foreclosure.

135. Commercial valuations on the Plaintiffs property indicate a public value greater than $600,000 and thus the SunTrust violations of the Equal Credit Act have cost Plaintiff more than $250,000 in the use of the equity in the residence ($600,000-$350,000 mortgage) or to refinance the mortgage.

136. SunTrust has shown a pattern of violating RESPA which calls for statutory damages of $1,000 per violation.

137. Due to SunTrust failure to complete an executed modification agreement, Plaintiff has been offered financing at more than a 10% interest rate, fees and cost to close a new mortgage of over 5%, and a lesser loan to value than would be achieved if the modification was in place. value.

138. Plaintiff, because of being in the finance profession, has been hampered from employment due to the derogatory credit ratings on the mortgage and the denoting that Plaintiffs property as being in foreclosure. The notations have caused hardship and loss of income.

140. The Fair Credit Reporting Act allows for a penalty of $1,000 per violation of the Act. SunTrust has continuously reported derogatory credit on the account.

141. The Fair Credit Reporting Act allows for punitive damages to be fashioned by the court.

142. The RESPA allows for damages of $10,000 plus actual and punitive damages in courts for willful violations.

143. The Federal Rules of Civil Procedure R. 9(B) allow a court to fashion damages based on a finding of fraud.

WHEREFORE, Plaintiffs, request this Court enter judgment against DEFENDANT as follows:

(1) An Order declaring, pursuant to 28 U.S.C. § 2201, that plaintiffs were denied equal credit and other benefits of a credit transaction and activities.

(2) An Order declaring DEFENDANT's actions arbitrary, capricious, and abuse of discretion, not in accordance with the law, and in excess of DEFENDANT's required compliance with Dodd-Frank Act and the RESPA and related regulatory guidance and code of federal regulations and statutes.

(3) An Order declaring DEFENDANT's actions to be a breach of plaintiff's rights and such actions have caused damages to Plaintiff, Violation of the Equal Credit Opportunity Act, systematic and calculated violation the Real Estate Settlement Practices Act and related laws and declare plaintiffs eligible to receive monetary and other relief of not less than $250,000 and to cure and dismiss all defaults on the loan and foreclosure proceedings.

(4) An Order be entered declaring DEFENDANT's actions are a proximate cause of the actions in foreclosure as directed by Defendant.

(5) An Order declaring that the Defendants conduct constituted fraud.

(6) An Order granting plaintiffs, and the attorney's, fees and cost the costs of suit, and interest from date when Defendants should have been finally approved all other relief that the Court determines proper and fair.

Respectfully Submitted,

By: _____
Christopher Earl Peek, Pro Se
3721 30th Place.NE
Washington, DC 20018
202-294-6496

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISTOPHER EARL PEEK,<br>3721 30th Place NE<br>Washington, DC 20018<br>(202) 294-6496<br>      Plaintiff<br><br><br>    v.<br><br>SUNTRUST BANK, INC.<br>Its Subsidiaries, affiliates, and Assigns,<br><br><br>    DEFENDANT | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action  No.


Jury Trial Requested

### CERTIFICATE OF SERVICE

This will certify that I have this day served a copy of the foregoing COMPLAINT upon opposing counsel of SUNTRUST by U.S. Mail addressed to the following:

        BWW Law Group, LLC
        Maryland/District of Columbia Office
        6003 Executive Blvd, Suite 101
        Rockville, MD 20852


This ___ day of  March 2019.

                                                                     C. Earl Peek, Pro Se'
                                                          3721 30th Place, NE
                                                          Washington, DC 20016
                                                            eptravbuff@aol.com