# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CHRISTOPHER EARL PEEK,** *Pro se* Plaintiff, v. **SUNTRUST BANK, INC.,** Defendant. | Case No. 19-cv-658 (CRC) |

## MEMORANDUM OPINION

Christopher Earl Peek has been trying since 2014 to thwart SunTrust Bank ("SunTrust") from foreclosing on his home. Peek first sued SunTrust in 2016 over his defaulted mortgage and unsuccessful loan modification request. That suit was dismissed by the United States District Court for the Eastern District of Virginia. See Peek v. SunTrust Mortgage, Inc. ("Peek I"), No. 16-cv-1415, 2017 WL 3258729, at *5 (E.D. Va. Feb. 15, 2017), aff'd, 693 F. App'x 231, 232 (4th Cir. 2017) (per curiam). He then brought the same suit in this Court, which was rebuffed under *res judicata*. See Peek v. SunTrust Bank, Inc. ("Peek II"), 313 F. Supp. 3d 201, 205 (D.D.C. 2018) (Cooper, J.). Back again, Peek challenges SunTrust's failure to accommodate a new loan modification request. Seeing no basis for relief, the Court will grant the bank's motion to dismiss, deny Peek's motion to amend his complaint as futile, and close the case.

## I. Background

In 2008, Mr. Peek obtained a mortgage loan from SunTrust Mortgage, Inc. secured by his residence in Washington, D.C. Prop. Am. Compl. ¶ I.1.[1] He defaulted on the loan in March

---

[1] The Court draws Peek's factual allegations from his proposed amended complaint, which contains introductory parts with unnumbered paragraphs. A citation to "¶ I.1" refers to

2014.  Id.  Peek later applied for a modification of the loan, which he thought SunTrust had approved in January 2016.  Id. ¶ I.2.  However, SunTrust allegedly changed course and initiated a foreclosure proceeding in District of Columbia Superior Court ("Superior Court Action").  Id.  That matter is currently pending.  See Def. Mot. to Dismiss, Exh. A.

In November 2016, Peek filed suit against SunTrust in the United States District Court for the Eastern District of Virginia ("Virginia Action").  The suit raised various federal and state law challenges to the pending foreclosure and the bank's response to Peek's loan modification request.  Judge Brinkema dismissed Peek's challenges to the pending foreclosure as barred by the Younger abstention doctrine and his challenges to SunTrust's denial of his loan modification request for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  See Peek I, 2017 WL 3258729, at *2–4.

Peek then sued SunTrust in this Court in November 2017 raising the same claims that he had brought in the Virginia Action.  On June 20, 2018, the Court granted SunTrust's motion to dismiss the suit as barred by *res judicata*.  See Peek II, 313 F. Supp. 3d at 205.  Peek's subsequent appeal was dismissed for lack of prosecution.  See Peek v. SunTrust Bank, Inc., No. 18-7117 (D.C. Cir. Mar. 11, 2019).

That same week, Mr. Peek initiated the present matter.  He maintains that this suit is "entirely different" from the earlier actions because it pertains to "an entirely new fact set based on new credit applications in 2018 and related activities between the Parties subsequent to the prior litigation."  Prop. Am. Compl. ¶ I.4.  Specifically, Peek claims that he filed a new loan modification request with SunTrust in July 2018, id. ¶¶ 12–13, 31, 33, 48–49, to which SunTrust

---

the first paragraph in Part I.  The rest of the proposed amended complaint contains numbered paragraphs, and the Court will cite to those by the designated paragraph number.

"either didn't reply, didn't reply timely, or provided alternate reasons for its credit decision verbally that was not documented in writing," id. ¶ II.1. SunTrust also allegedly "added new items to the application process [and] deleted documents submitted by Peek that would have qualified him for credit approval." Id. ¶ II.3. Peek further contends that SunTrust employees notified him that the foreclosure process would be "stayed, suspended, or withdrawn while he had an active application for modification, but continued to pursue foreclosure and litigation contrary to its written and verbal assurances." Id. ¶ II.4. He demands declaratory relief, compensatory damages of at least $250,000, and statutory damages. See id., Prayer for Relief, ¶¶ 1–6. SunTrust moves to dismiss.

## II. Legal Standards

In order to survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In deciding such a motion, the Court is limited to considering the facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which a court may take judicial notice, and matters of public record. See Kaempe v. Myers, 367 F.3d 958, 965 (D.C. Cir. 2004); EEOC v. St. Francis Xavier Parochial Sch., 117 F. 3d 621, 624–25 (D.C. Cir. 1997).

Peek has also filed a motion for leave to amend his complaint. Under Federal Rule of Civil Procedure 15(a)(2), leave to amend "should be freely given in the absence of undue delay, bad faith, undue prejudice to the opposing party, repeated failures to cure deficiencies, or futility." Richardson v. United States, 193 F.3d 545, 548–49 (D.C. Cir. 1999). An amended complaint would be futile if "the proposed claim would not survive a motion to dismiss [under Rule 12(b)(6)]." James Madison Ltd. by Hecht v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996).

3

## III. Analysis

SunTrust moves to dismiss on the grounds that (1) Peek's suit is barred by *res judicata*; (2) the Court lacks jurisdiction under the Younger abstention doctrine; and (3) Peek fails to state a claim upon which relief may be granted. The Court considers each ground in turn.

### A. Res judicata

As the Court explained in Peek II, "*[r]es judicata* (or claim preclusion) holds that 'a judgment on the merits in a prior suit bars a second suit involving the same parties . . . based on the same cause of action.'" Peek II, 313 F. Supp. 3d at 204 (quoting Drake v. FAA, 291 F.3d 59, 66 (D.C. Cir. 2002)). SunTrust argues that Peek's claims are again barred by *res judicata*. See Def. Mot. to Dismiss 8–9. This time around, however, SunTrust cannot succeed on this ground.

*Res judicata* only applies where "the two actions share the same nucleus of facts." Lauterbach v. Huerta, 817 F.3d 347, 351 (D.C. Cir. 2016) (internal quotation marks omitted). Peek's claims in the prior actions were based, in part, on SunTrust's failure to accommodate his January 2016 loan modification request. See Peek I, 2017 WL 3258729 at *1–3; Peek II, 313 F. Supp. 3d at 203, 206. By contrast, Peek's claims in this suit are premised on a *subsequent* loan modification request that he says he made in July 2018. See Prop. Am. Compl. ¶¶ 12–13. Although related to the same underlying loan, SunTrust's response—or lack thereof—to that request, which purportedly came *after* the prior lawsuits concluded, present a different set of facts than those at issue in the prior actions. See, e.g., Sieverding v. DOJ, 847 F. Supp. 2d 75, 82 (D.D.C. 2012),) (declining to find Plaintiff's Privacy Act claim barred by *res judicata* where "[h]er current complaint and filings refer to documents she obtained . . . *after* final judgment was entered in [the prior suit]" (emphasis added)), aff'd, No. 13-5060, 2013 WL 6801184 (D.C. Cir. Dec. 11, 2013. Accordingly, the present suit is not barred under *res judicata*. See, e.g., Drake,

291 F.3d at 66 (noting that *res judicata* only applies to prevent parties "from relitigating issues that *were or could have been raised*" in a prior action (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)) (emphasis added)).

B. *Younger* Abstention

SunTrust also urges the Court to decline to exercise jurisdiction under the Younger abstention doctrine so as not to interfere with the mortgage foreclosure proceeding, which is still pending in D.C. Superior Court. See Younger v. Harris, 401 U.S. 37, 45 (1971) ("[T]he normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions."). The Court should stand down, SunTrust argues, because "there has been no impediment to the Plaintiff raising all issues and claims pertaining to the SunTrust mortgage in the [Superior Court Action]." Def. Mot. to Dismiss 8–9.

SunTrust cannot rely on Younger this time either.[2] Younger announced a "policy forbidding federal courts [from] stay[ing] or enjoin[ing] pending state court proceedings except under special circumstances." 401 U.S. at 41. Unlike in the prior actions, Peek does not "seek[] to enjoin or void [the] . . . state court foreclosure action"; he challenges only SunTrust's failure to accommodate his renewed loan modification requests under federal and state law. Stoller v. Ocwen Fin. Corp., 140 F. Supp. 3d 80, 83 (D.D.C. 2015). Success on those claims would not

---

[2] Although Judge Brinkema held in the Virginia Action that "whatever merits claims plaintiff may have *regarding SunTrust's disposition of his mortgage* must be litigated in the foreclosure proceeding in D.C. Superior Court and declaratory judgment is inappropriate," she went on to analyze the merits of Peek's separate claims under ECOA and RESPA based on his first loan modification request. Peek I, 2017 WL 3258729 at *2 (emphasis added). If anything, Judge Brinkema's decision to analyze the merits of the federal claims supports the Court's conclusion that Peek's claims based on his renewed loan modification requests are not subject to Younger.

5

entitle Peek to injunctive relief with respect to the pending Superior Court Action.[3] See generally Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 72 (2013) ("In the main, federal courts are obliged to decide cases within the scope of federal jurisdiction. Abstention is not in order simply because a pending state-court proceeding involves the same subject matter."). Younger therefore does not impede Peek's suit.

C. Failure to State a Claim

Assured of its jurisdiction, the Court turns to the merits of Peek's claims. Peek sues SunTrust under the federal Real Estate Settlement Practices Act ("RESPA"), Equal Credit Opportunity Act ("ECOA"), and Fair Debt Collection Practices Act ("FDCPA") as well as state common law.[4]

1. *Real Estate Settlement Practices Act*

Congress enacted RESPA "to insure that consumers . . . are provided with greater and more timely information on the nature and costs of the [real estate] settlement process" and to protect them "from unnecessarily high settlement charges caused by certain abusive practices." 12 U.S.C. § 2601(a). To that end, RESPA imposes obligations on loan servicers to respond to qualified written requests for information. See id. § 2605(e). In addition to these specific

---

[3] Although the proposed amended complaint requests "revers[al] and delet[ion]" of SunTrust's "actions in foreclosure" and "rescission of the $350,000 mortgage [or] cancellation of the mortgage," Prop. Am. Compl. ¶¶ 110, 128, none of the federal consumer protection statutes that Peek invokes authorize the Court to grant injunctive relief with respect to a pending state foreclosure proceeding. So to be clear: the foreclosure case would proceed even if Peek were to succeed on one of his claims here.

[4] The proposed amended complaint also cursorily mentions the Fair Credit Reporting Act, Prop. Am. Compl. ¶ 140–41, and the Bank Secrecy Act, id. ¶ 102. "[M]ere passing references to these two statutes," however, "fail[] to state claims." Dickerson v. District of Columbia, 70 F. Supp. 3d 311, 325 (D.D.C. 2014).

6

obligations, the Dodd-Frank Act amended RESPA to generally prohibit servicers from "fail[ing] to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties" and "fail[ing] to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." Id. § 2605(k)(1)(C), (E).

Pursuant to § 2605(k), the Consumer Financial Protection Bureau ("CFPB") amended Regulation X—RESPA's implementing regulation—in 2013 to "address[] servicers' obligations to establish reasonable policies and procedures to," among other objectives, "evaluate borrowers' applications for available loss mitigation options." Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10,696, 10,696 (Feb. 14, 2013). Regulation X now requires loan servicers "to follow specified loss mitigation procedures for a mortgage loan secured by a borrower's principal residence." Id. at 10,698. Among these, servicers must, within 30 days of receiving a complete loss mitigation application, "[p]rovide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage." 12 C.F.R. § 1024.41(c)(ii).

Although Peek's proposed amended complaint does not invoke a specific RESPA provision, his opposition brief cites to Regulation X. See Pl. Opp. 19–20. The Court will thus construe Peek as raising a claim under Regulation X's loss mitigation procedures.

Peek's basic argument seems to be that that SunTrust violated RESPA by failing to "render a credit decision" within 30 days of a loan modification request that he submitted in July

7

2018.[5] Prop. Am. Compl. ¶¶ 31–32. Regulation X sets the servicer's response deadline as "within 30 days of receiving [a] *complete* loss mitigation application," 12 C.F.R. § 1024.41(c)(1) (emphasis added), and defines "complete loss mitigation application" to mean "an application in connection with which a servicer has received *all* the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower," id. § 1024.41(b)(1) (emphasis added). Peek alleges that "SunTrust notified [him] in writing that the credit application was complete on or near July 29, 2018." Prop. Am. Compl. ¶ 31. He goes on to allege, however, that SunTrust employees asked him for further documents relating to his application *after* that date, see, e.g., id. ¶ 33 ("Thorpe informed Peek on August 9, 2018 to submit full bank statements without redactions."); id. ¶¶ 34–35 ("Peek spoke with Amanda Jones on August 17, 2018 [and] was informed that the only item needed to complete the MAA was a June 2018 bank statement," which was not received until August 20, 2018), and that SunTrust employees later confirmed that "the *complete* MAA was received on August 20, 2018," id. ¶ 36 (emphasis added); see also id. ¶ 43 ("Rainey confirmed that Joanne Harris, another SunTrust representative, also confirmed that Peek had a complete MAA per by SunTrust on August 21, 2018."). Accepting Peek's timeline, the proposed amended complaint is best read to allege that Peek's loss mitigation application was "complete" for the purposes of Regulation X on August 20, 2018, making SunTrust's response deadline September 20, 2018. Peek's first mention of a response from SunTrust is October 12, 2018. See id. ¶ 50 ("Peek was informed verbally on or

---

[5] The proposed amended complaint vaguely alleges that "Peek made verbal and completed written *applications* for modification of his mortgage in July–November 2018," Prop. Am. Compl. ¶ II.1 (emphasis added), but later allegations indicate that these communications were all related to a single loan modification application that was first submitted in July 2018, see, e.g., id. ¶¶ 31, 33, 48–49.

8

near October 12, 2018 that the MAA credit application could not be approved due to a $370 DC Water lien on the property.").[6]

Even assuming that Peek submitted a "*complete* loss mitigation application" on August 20, 2018 and that SunTrust missed the response deadline by as few as 23 days, "[a]lleging a breach of RESPA duties alone is not enough" to state a claim for relief. Conant v. Wells Fargo Bank, N.A., 60 F. Supp. 3d 99, 115 (D.D.C. 2014) (internal quotation marks omitted). "A plaintiff must, at a minimum, allege that the breach resulted in actual damages." Id.; see 12 U.S.C. § 2605(f)(1)(A) (imposing liability on loan servicers for "any actual damages to the borrower *as a result of* the failure [to comply with RESPA]" (emphasis added)); 12 C.F.R. § 1024.41(a) ("A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. § 2605(f))."). Peek offers no plausible theory under which he suffered actual damages stemming from SunTrust's purported delay in responding to his application, let alone a delay as brief as 23 days.[7]

Although Peek vaguely alleges damage to his reputation, credit, and ability to refinance the property, he has not "plead[ed] facts that link [his] injur[ies] to defendant's alleged RESPA violations—*rather than the underlying failure to pay [his] mortgage and the potential*

---

[6] Peek alleges that he was in further communication with SunTrust employees about additional items related to the application as late as September 18, 2018. See, e.g., id. ¶¶ 48–49. If the loss mitigation application was not complete until September 18, 2018, SunTrust's October 12, 2018 response would have been within the 30-day statutory deadline.

[7] RESPA imposes liability for "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C. § 2605(f)(1)(B). Although Peek alleges that "SunTrust has shown a pattern of violating RESPA which calls for statutory damages of $1,000 per violation," Prop. Am. Compl. ¶ 136, this "[t]hreadbare recital[] of the elements of a cause of action"—with no supporting factual allegations—"do[es] not suffice" to state a claim for relief. Iqbal, 556 U.S. at 678.

*foreclosure sale*," Almazon v. JPMorgan Chase Bank, Nat'l Ass'n, No. 19-CV-4871 (VEC), 2020 WL 1151313, at *19 (S.D.N.Y. Mar. 9, 2020) (internal quotation marks omitted) (emphasis added). Indeed, the proposed amended complaint is strewn with allegations that Peek suffered his alleged harms because his loan was in default or because the property was in foreclosure. See, e.g., Prop. Am. Compl. ¶ 134 ("Plaintiff has suffered a decline in credit score creating more cost for credit and has not been able to secure a refinancing of the SunTrust loan *due to credit notations by SunTrust [of] the delinquent loan status and that the property was in foreclosure*." (emphasis added)); id. ¶ 138 ("Plaintiff, because of being in the finance profession, has been hampered from employment *due to the derogatory credit ratings on the mortgage and the denoting that Plaintiff['s] property as being in foreclosure*." (emphasis added)). None of these allegations are remotely tied to SunTrust's alleged delay in responding to Peek's loan modification request, which, as explained below, SunTrust was under no obligation to approve. See, e.g., Reyes-Aguilar v. Bank of America, N.A., No. 13-CV-05764-JCS, 2014 WL 2917049, at *12 (N.D. Cal. June 24, 2014) (rejecting "Plaintiffs['s] vague[] alleg[ation] that the lack of response resulted in uncertainty regarding which entities held their loan, damage to their reputation and credit, monetary damages, the impending foreclosure of their home, mental anguish, worries that they will lose their home, and late fees" as insufficiently tied to the RESPA violation). Nor does Peek allege that the delayed response affected the foreclosure proceeding; to the contrary, the proceeding remains pending and Peek's property has not been sold.

Peek's related claim that SunTrust's lawyers were "continually . . . pursuing litigation in foreclosure" despite his loss mitigation application also fails. Prop. Am. Compl. ¶ 45. Regulation X provides that "[i]f a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing . . . for any judicial . . . foreclosure process . . . , a

10

servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless," as relevant here, the servicer has denied the loss mitigation option and the appeals process has been exhausted.  12 C.F.R. § 1024.41(g)(1).  Peek "appears to interpret the regulation as prohibiting a servicer from taking *any* 'action' in a pending foreclosure proceeding, no matter how minor, whenever the borrower seeks a loan modification."  Almazon, 2020 WL 1151313, at *18 (emphasis added).  "The Regulation X prohibition is not, however, that broad," id.; it extends only to actions that will "*directly result* in the issuance of a foreclosure judgment or order of sale, or a foreclosure sale," Mortgage Servicing Rules, 78 Fed. Reg. at 10,834 (emphasis added).

It is not clear from Peek's proposed amended complaint what "action[s]" SunTrust's lawyers took in the Superior Court Action during the regulatory litigation hold, and that proceeding's public docket indicates that SunTrust did not move for summary judgment until December 31, 2018—more than two months after denying Peek's modification application.  Def. Mot. to Dismiss, Exh. A at 4; see Mortgage Servicing Rules, 78 Fed. Reg. at 10,834 (stating that the litigation hold only applies "until the servicer has completed the evaluation of the borrower for a loss mitigation option"); 12 C.F.R. § 1024.41(g)(1) (same).  In any case, Peek's cursory allegation that he "suffered emotional distress, damage to his reputation and credit standing, could not seek employment in his field as an accountant, lender, and banker due to SunTrust['s] continued pursuit of foreclosure," Prop. Am. Compl. ¶ 46, fails to plausibly allege actual damages resulting from whatever purported actions SunTrust's lawyers took during the regulatory litigation hold period, see, e.g., Reyes-Aguilar, 2014 WL 2917049, at *12 ("While claims of harm to credit and monetary damages can constitute plausible allegations of actual

11

damages under RESPA, Plaintiffs fail to present facts to infer that they actually suffered such damages as a result of Defendants' actions").

Finally, Peek maintains that SunTrust wrongfully denied his loan modification application. See, e.g., Prop. Am. Compl. ¶¶ 50.1, 50.2, 51.2, 65 (alleging that SunTrust informed Peek that his application could not be approved due to a water lien on the property and that "the lien didn't exist and there was no debt," but "SunTrust didn't address, resolve, or correct the error it made on the water lien which led to a denial of credit from SunTrust").[8] But, "a servicer's failure to correctly evaluate a borrower for a loss mitigation option [is not] a covered error" under Regulation X. Mortgage Servicing Rules, 78 Fed. Reg. at 10,744. And, the loss mitigation procedures expressly provide that

> [n]othing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option. Nothing in § 1024.41 should be construed to create a right for a borrower to enforce the terms of any agreement between a servicer and the owner or assignee of a mortgage loan, including with respect to the evaluation for, or offer of, any loss mitigation option or to eliminate any such right that may exist pursuant to applicable law.

12 C.F.R. § 1024.41(a). Peek's "proffered errors are variations on a theme that Defendant erred in not [modifying his] mortgage loan" and cannot state a claim under RESPA or Regulation X. Sutton v. CitiMortgage, Inc., 228 F. Supp. 3d 254, 267 (S.D.N.Y. 2017).[9]

For all the above reasons, Peek fails to state a valid RESPA claim.

---

[8] The proposed amended complaint contains two sets of paragraphs that are numbered 50–54; ".1" refers to the first iteration and ".2" refers to the second.

[9] Peek's allegations concerning SunTrust's alleged failure to accommodate his request to eliminate his purchase mortgage insurance ("PMI") suffer from the same flaw. See, e.g., Prop. Am. Compl. ¶ 27 ("SunTrust denied eliminating the PMI even though it knows or should have known of the value of Peek['s] property therefore causing excessive interest to be accrued for the loan payments and delinquency amounts.").

### 2. Equal Credit Opportunity Act

Under ECOA, it is "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(l). To facilitate the detection of discriminatory conduct, ECOA obligates creditors, "[w]ithin thirty days . . . after receipt of a completed application for credit, . . . [to] notify the applicant of its action on the application." Id. § 1691(d)(1). For those suffering "adverse action," the notice should include "a statement of reasons for such action." Id. § 1691(d)(2).

To the extent that Peek alleges that SunTrust violated ECOA by refusing to grant his loan modification request because of his race, he fails to state a claim. Peek generally alleges that he is African American and that he "was eligible for a loan modification but was denied credit by SunTrust as compared to other similarly situated persons." Prop. Am. Compl. ¶¶ I.1, 96. But, Peek "cannot merely invoke his race in the course of a claim's narrative and automatically be entitled to pursue relief." Bray v. RHT, Inc., 748 F. Supp. 3, 5 (D.D.C. 1990). Peek "present[s] no facts from which [the Court] could conclude that race was a factor" in his interactions with SunTrust or in its determinations. Pres. Bank, FSB v. 1733 27th St. SE LLC, 271 F. Supp. 3d 163, 171 (D.D.C. 2017).

To the extent that Peek alleges that SunTrust violated ECOA by failing to timely notify him of its decision to deny his loan modification requests, see, e.g., Prop. Am. Compl. ¶¶ I.2, 97, 129–32, that claim also fails. To be sure, ECOA sets a 30-day deadline for a creditor to notify a borrower of any adverse action taken on a completed loan application. See 15 U.S.C. § 1691(d)(1)–(2); 12 C.F.R. § 202.9(a)(1). The term "adverse action" encompasses "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant

13

credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6). Congress expressly provided, however, that "[s]uch term does *not* include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default . . . ." Id. (emphasis added). There is no dispute that Peek's mortgage loan was "in default" or that he was attempting to seek "additional credit." Id.; see 12 C.F.R. § 202.2(q) (defining "extend credit" to include "the refinancing or other renewal of credit"). Accordingly, SunTrust's refusal of Peek's loan modification request did not constitute an "adverse action" and thus did not trigger the statutory 30-day notice obligation. See, e.g., Rockridge Trust v. Wells Fargo, N.A., 985 F. Supp. 2d 1110, 1141 (N.D. Cal. 2013) (holding that "[t]he denial of modification" where plaintiff "was in default on his mortgage at the time" "is not an adverse action"); Pandit v. Saxon Mortg. Servs., Inc., No. 11-cv-3935 JS GRB, 2012 WL 4174888, at *7 (E.D.N.Y. Sept. 17, 2012) (holding that "a denial of a . . . loan modification [request] d[id] not trigger the ECOA's adverse action explanation requirement" where plaintiffs "were in default of their mortgage for the purposes of the ECOA").[10]

---

[10] One court in another jurisdiction has interpreted Section 1691 as providing two separate rights: (1) to notification of an "action" on a credit application; and (2) to a statement of reasons the creditor takes an "adverse action" on the credit application. MacDonald v. Wells Fargo Bank N.A., No. 14-CV-04970-HSG, 2015 WL 1886000, at *3 (N.D. Cal. Apr. 24, 2015). That court concluded that the "delinquent or otherwise in default" carve-out impacts only a borrower's right to a statement of reasons, not their right to notification of a decision. Id. As other courts have noted, however, MacDonald was decided without the benefit of consideration of § 1691's implementing regulations; those "regulations clarify that notification is 'required' only for approval, counteroffer, or 'adverse action.'" Smith v. Wells Fargo Bank, N.A., No. 15-cv-1779-YGR, 2016 WL 283521, at *7 (N.D. Cal. Jan. 25, 2016) (quoting 12 C.F.R. § 202.9(a)(1)(i)). And, the regulatory definition of "adverse action" expressly excludes "[a]ny action or forbearance relating to an account taken in connection with inactivity, default, or delinquency as to that account." 12 C.F.R. § 202.2(c)(2)(ii).

Although the question has not been squarely presented in this jurisdiction, Judge Contreras expressed "doubt[] that the statutory definition of an adverse action must be met for an

14

In any case, as with his RESPA claim, Peek fails plausibly to allege that he suffered "actual damages" because of SunTrust's failure to notify him within 30 days of its decision on his loan modification requests—as opposed to the underlying foreclosure or loan default. See 15 U.S.C. § 1691e(a) (permitting aggrieved applicants to seek "actual damages" for a creditor's "fail[ure] to comply with any requirement imposed under [ECOA]"). That is an independent basis for dismissing Peek's ECOA claim.

### 3. Fair Debt Collection Practices Act

Peek next alleges that SunTrust's lawyers violated the FPDCA in connection with statements made during a February 2019 court hearing, presumably in the Superior Court Action. Prop. Am. Compl. ¶ 101. This, too, fails to state a claim. The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(a). Peek has not shown that SunTrust (or its lawyers) qualify as "debt collectors" within the meaning of the FDCPA. The statute defines "debt collector" to "mean[] any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due *another*." 15 U.S.C. § 1692a(6) (emphasis added). SunTrust is the creditor of Peek's mortgage loan, and "creditors are not liable under the FDCPA." Walker v. Nationstar Mortg. LLC, 142 F. Supp. 3d 63, 69 (D.D.C. 2015) (internal quotation marks

---

ECOA *discrimination* claim." Pres. Bank, 271 F. Supp. 3d at 170 (emphasis added). However, nothing in Judge Contreras's opinion suggests that the same is true of ECOA's notice provision. Indeed, Judge Contreras noted that "the definition of adverse action" appears in connection with the "separate requirement in subsection (d) that creditors notify applicants *after taking adverse actions*." Id. (emphasis added).

15

omitted). Although SunTrust's lawyers may potentially qualify as "debt collectors,"[11] they are not named as defendants in this suit.

In any case, even if the FDCPA does apply to SunTrust or its lawyers, Peek does not make out a statutory violation. Peek alleges that "SunTrust's lawyers, BWW Law Group, violated the [FDCPA] by disclosing in a public Court Hearing [on] February 1, 2019 of a credit decision of [SunTrust] by not issuing a Mini Miranda of 'This is an attempt to collect a debt . . . ' [a]t the hearing." Prop. Am. Compl. ¶ 101. Although Peek does not invoke any specific statutory provision, he appears to be relying on § 1692e(11).

"Section 1692e of the [FDCPA] prohibits debt collectors from using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.'" Jones v. Dufek, 830 F.3d 523, 525 (D.C. Cir. 2016) (quoting 15 U.S.C. § 1692e). One enumerated instance is a debt collector's

> failure to disclose in the initial written communication with the consumer and, in addition, if the *initial* communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

15 U.S.C. § 1692e(11).

To determine whether a debt collector is liable for a violation of § 1692e, courts apply an objective "least sophisticated consumer" standard, Dufek, 830 F.3d at 525 & n.2, which "takes into account whether the least sophisticated debtor would likely be misled by a communication,"

---

[11] See, e.g., Heintz v. Jenkins, 514 U.S. 291, 294 (1995) ("[A] lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly 'attempts' to 'collect' those consumer debts."); Lipscomb v. The Raddatz Law Firm, P.L.L.C., 109 F. Supp. 3d 251, 258 (D.D.C. 2015) (same).

Davis v. Hollins Law, 832 F.3d 962, 964 (9th Cir. 2016) (internal quotation marks omitted).[12]

Even assuming that § 1692e(11) encompassed SunTrust's counsel's communication with Peek at the February 2019 hearing,[13] it is not plausible that "the least sophisticated debtor would likely be misled" by SunTrust's counsel's failure to warn that it was attempting to collect a debt. The February 2019 hearing was presumably in the mortgage foreclosure action; even the "least sophisticated consumer" would know that the statements of a creditor's lawyers in a foreclosure action would be related to collecting a debt.[14] "[G]iven the extent of the prior communications" between SunTrust and Peek and the foreclosure action setting, it would be obvious to "a debtor with a basic level of understanding" that "the communication at issue was 'from a debt

---

[12] That standard applies both to § 1692e's general prohibition of "false, deceptive, or misleading representation[s]" and to its enumerated, non-exhaustive examples of such representations. See, e.g., Dufek, 830 F.3d at 526 (applying the "least sophisticated consumer" standard to a plaintiff's claim that a debt collector violated § 1692e(5)).

[13] Peek appears to be relying on the portion of § 1692e(11) that makes unlawful a debt collector's "failure to disclose . . in [an] *initial* oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." 15 U.S.C. § 1692e(11) (emphasis added)  But, the February 2019 hearing was not SunTrust or its counsel's initial communication with Peek; the mortgage foreclosure proceeding had been ongoing since 2016 and Peek had been seeking loan modifications from SunTrust in interim. The provision also prohibits a debt collector's "failure to disclose in subsequent communications that the communication is from a debt collector." 15 U.S.C. § 1692e(11). Peek does not allege that SunTrust's counsel's communication was misleading as to whether they were engaged in debt collection. In any case, as will be explained, Peek fails to show that the "least sophisticated consumer" would not know that the communication was "from a debt collector."

[14] Indeed, Congress expressly exempted "formal pleading[s] made in connection with a legal action" from § 1692e(11)'s reach. 15 U.S.C. § 1692e(11). Although SunTrust's counsel's oral statements at a hearing in a legal action do not technically qualify as "formal pleading[s]," the express exemption evinces Congress's belief that consumers would be less susceptible to being misled by statements made in the course of a formal legal action.

17

collector.'" Davis, 832 F.3d at 967.[15]  Accordingly, Peek's allegation concerning the February 2019 hearing fails to state a claim under the FDCPA.

    D.  Fraud

Finally, Peek broadly alleges that SunTrust intentionally disregarded, discounted, and rejected the documentation that he submitted and engaged in a fraudulent scheme to deny him credit.  Prop. Am. Compl. ¶¶ 112–124.  Federal Rule of Civil Procedure 9 imposes a heightened pleading standard for common law fraud claims,[16] under which a plaintiff must "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  To satisfy this standard, a complaint must "state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud."  U.S. ex rel. Williams v. Martin-Baker Aircraft Co., 389 F.3d 1251, 1256 (D.C. Cir. 2004) (quoting Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1278 (D.C. Cir. 1994)).  Peek's proposed amended complaint fails to clear this high bar.  Even if "Plaintiff states with particularity the alleged fraudulent statement[s] of [SunTrust], . . . his Complaint . . . fail[s] to specifically identify any actions he has taken in reliance on th[ese] statement[s] and the resulting damage from this reliance."  Conant, 60 F. Supp. 3d at 113.

---

[15] Peek himself is hardly the "least sophisticated debtor" given his purported accounting and finance background.  But he is still entitled to that generous standard.

[16] Under District of Columbia law, common law fraud has five elements: "(1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation."  Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp., 944 A.2d 1055, 1073–74 n.22 (D.C. 2008).

## IV. Conclusion

For the foregoing reasons, the Court concludes that neither the complaint nor the proposed amended complaint state a claim for relief. Accordingly, the Court will grant SunTrust's Motion to Dismiss and deny Peek's Motion to Amend the Complaint as futile. The Court will also deny as moot Peek's two Motions to Stay the Foreclosure, Motion to Strike Answer, and Motion for Relief from Order. A separate order follows.

_____
CHRISTOPHER R. COOPER
DATE: <u>March 24, 2020</u>   United States District Judge